IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 05-cv-01282-MSK-MEH

JEFFREY SCOTT DURHAM,

      Plaintiff,

v.

HARLEY G. LAPPIN,
HARRELL WATTS,
G. L. HERSHBERGER,
ROBERT A. HOOD,
C. CHESTER,
J. ZUERCHER,
T. G. WERLICH,
MARK COLLINS, and
RANDY MADISON,

      Defendants.

_____

**OPINION AND ORDER GRANTING, IN PART, MOTIONS TO DISMISS AND
DENYING OTHER MOTIONS AND OBJECTIONS**

_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Objections **(# 48)** to

the November 22, 2005 Order **(# 45)** of United States Magistrate Judge O. Edward Schlatter

denying the Plaintiff's Motion to Appoint Counsel **(# 40)**; the Defendants' Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(1) **(# 49)**, the Plaintiff's response **(# 69)**, and the Defendants'

reply **(# 86)**;  Defendants Hershberger, Lappin, and Watts' Motion to Dismiss Pursuant to Fed. R.

Civ. P. 12(b)(2) **(# 50)**, the Plaintiff's response **(# 65, 77, 95, as supplemented # 111)**,[1] and these

_____

      [1]Docket # 65 and # 77 each appear to be identical responses to the motion.  Docket # 95
is a copy of those responses, accompanied by a letter complaining of the incorrect docketing of

1

Defendants' reply (**# 72**); the Plaintiff's Objections (**# 54**) to the November 29, 2005 Minute

Order (**# 47**) of Magistrate Judge Schlatter denying the Plaintiff's Motion to Ascertain if Each

Defendant Has Been Properly Served (**# 43**); the Defendants' Motion to Dismiss Pursuant to Fed.

R. Civ. P. 12(b)(6) (**# 55**),[2] the Plaintiff's response (**# 76, 90**),[3] and the Defendants' reply (**# 92**);

the Plaintiff's Motion for Order to Correct Discrepancies in the Docket (**# 101**); the Plaintiff's

Objections (**# 112**) to the March 13, 2006 Order of United States Magistrate Judge Patricia A.

Coan (**# 103**) denying various motions by the Plaintiff, the Defendants' response (**# 115**), and the

Plaintiff's reply (**# 121**); the Plaintiff's Objections (**# 119**) to the April 6, 2006 Order (**# 114**) of

Magistrate Judge Coan directing service of process; the Plaintiff's Objections (**# 122**) to the

April 19, 2006 Order (**# 117**) of Magistrate Judge Coan vacating her April 6, 2006 Order directing

service; the Plaintiff's Motion to Transfer the Case (**# 123**); the Defendants' Motion to Dismiss

the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (**# 124**), and the Plaintiff's response[4]

---

Docket # 77. The Plaintiff is correct that docket # 77 incorrectly identifies the motion to which it responds. The document is a response to the Defendants' Rule 12(b)(2) motion, found at docket # 50, not the Rule 12(b)(1) motion, found at docket # 49. **The Clerk of the Court shall correct the docket entry of this response to correctly identify this document.** However, the Plaintiff is advised that it is not necessary to refile copies of documents already found in the docket simply because the docket entry identifying that document is incorrect.

[2]This document is incorrectly docketed as a motion to dismiss pursuant to Rule 12(b)(1). **The Clerk of the Court shall correct the docket entry for this filing to properly identify it as a motion to dismiss Pursuant to Rule 12(b)(6).**

[3]Docket # 76 is incorrectly docketed as a "reply." **The Clerk of the Court shall correct the docket entry for this filing to properly identify it as a response to the Defendants' motion.**

[4]The Plaintiff filed an Emergency Motion for Extension of Time to Respond (**# 132**) to the Defendants' second rule 12(b)(6) motion. Although the Plaintiff has since filed his response, the motion for extension of time remains pending. Accordingly, the motion for extension of time is denied as moot.

(**# 133**); Defendant Lappin, Watts, and Hershberger's Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) (**# 125**),[5] and the Plaintiff's response (**# 128**).

## FACTS

The Plaintiff *pro se* commenced this action by filing a Complaint (**# 3**), generally alleging that his exposure to secondhand smoke while confined at the Federal Bureau of Prison's Administrative Maximum Facility at Florence, Colorado ("ADX") violated his Fifth and Eighth Amendment rights under the U.S. Constitution. The Complaint purported to allege four claims: (i) by exposing the Plaintiff to secondhand smoke, the Defendants demonstrated deliberate indifference to the risk that he would suffer serious physical harm, in violation of the Eighth Amendment; (ii) by failing to protect the Plaintiff and by placing him in a position of danger, the Defendants violated the Plaintiff's Substantive Due Process rights under the Fifth Amendment; (iii) that Defendants Lappin and Hershberger failed to adequately supervise the remaining Defendants to ensure that the Plaintiff's constitutional rights were not violated; and (iv) that the Defendants actions constitute "torture" in violation of "customary international law" and various treaties.

The Plaintiff moved for appointment of counsel (**# 40**). By Order dated November 22, 2005, Magistrate Judge Schlatter denied (**# 45**) that motion, finding that the Plaintiff was currently capable of presenting his case and because the Plaintiff had not indicated that he had made reasonable efforts to obtain counsel on his own. The Plaintiff filed the instant Objections (**#**

---

[5]This document is incorrectly docketed, insofar as the docket entry lists only Defendant Lappin as the movant. **The Clerk of the Court shall correct the docket entry for this filing to properly identify all of the moving Defendants.**

**48)** to that Order, arguing that: (i) Magistrate Judge Schlatter's finding that the Plaintiff had not shown efforts to obtain counsel on his own was erroneous; and (ii) the issues in the case are complex, and this Court had previously directed the appointment of counsel in a similar proceeding by the Plaintiff.

The Defendants filed a trio of Motions to Dismiss, each invoking a different subsection of Fed. R. Civ. P. 12(b).[6]   One motion **(# 49)** seeks relief under Fed. R. Civ. P. 12(b)(1), on the grounds that some (but not all) of the grounds upon which the Plaintiff asserts jurisdiction are not applicable, and on the grounds that the Court lacks jurisdiction to consider the Plaintiff's fourth claim for relief, sounding in a violation of various treaties and international law.   The second Rule 12 motion **(# 50)**, is filed by Defendants Lappin, Watts, and Hershberger only, and alleges that the Court lacks personal jurisdiction over them pursuant to Fed. R. Civ. P. 12(b)(2).   Specifically, they contend that, as administrators of regional or national programs by the Bureau of Prisons,

---

[6]Although neither the Federal Rules of Civil Procedure, the Local Rules, or this Court's Practice Standards clearly forbid the filing of multiple Rule 12 motions, each addressing different grounds, the Court strongly discourages such a practice.  The Court discerns no significant advantages resulting from having each separate ground for dismissal presented in a separate motion (as opposed to separate point headings within the same document), but finds that this practice results in several disadvantages.  For example, the practice triples the number of docket entries required for briefing, making an already lengthy docket even more difficult to manage, navigate, and review.  It has the potential to spawn motion practice in triplicate, as any party needing an extension of time to respond or reply to all three motions might find it necessary to make such requests separately as well.  It also creates needless redundancy across motions, as each motion necessarily duplicates some or all of the introduction and factual recitation found in its siblings, and often duplicates substantive arguments as well.  *Compare Docket # 50* at 5-6 *with Docket # 55* at 14-15 (repeating argument that Plaintiff did not adequately allege personal participation); *Docket # 49* at 3-4 *with Docket # 55* at 15 n. 3 (repeating argument that Plaintiff fails to state a claim for violation of international law).  The result of this compounded practice is greater expense for the litigants and delay in resolution of the matter. Except in unusual circumstances, the Court hopes that, in the future, the Government will join all requests for relief of a similar legal character into a single motion.

they lack the sufficient minimum contacts with the State of Colorado.  In addition, they contend that the Plaintiff fails to state a claim against them because he fails to adequately allege their personal participation in any constitutional violation.  The third motion alleges that the Plaintiff fails to state a claim under Fed. R. Civ. P. 12(b)(6) in various respects: (i) that he failed to adequately exhaust his administrative remedies prior to suit in violation of 42 U.S.C. § 1997e(a); and (ii) that the Defendants are entitled to qualified immunity in that the Plaintiff fails to adequately allege their personal participation in any deprivation, fails to allege that the Defendants actually knew of a risk of harm facing the Plaintiff, fails to allege anything more than a violation of administrative policies, and fails to establish that freedom from secondhand smoke was a "clearly established" right at the time of the challenged conduct.

While these motions were being briefed, the Plaintiff filed an Amended Complaint (# 73). The Amended Complaint struck out the various jurisdictional allegations challenged by the Defendants, and appeared to drop all of the claims previously asserted in the Complaint, with the exception of the Eighth Amendment claim.

The Plaintiff moved to correct (# 101) certain discrepancies between the captions of certain pleadings he had filed and the Court's docket identifying those pleadings.

On March 13, 2006, Magistrate Judge Coan issued rulings (# 104) on numerous pending motions.  The Plaintiff filed Objections (# 112) to that portion of Magistrate Judge Coan's denial of his Motions to Conduct Jurisdictional Discovery (# 52, 58), his Motions for Judicial Notice of Adjudicative Facts (# 53, 83), and his Motion to Strike Due To Lack of Proper Representation Authority (# 96).  Each of these objections was supported only by reference to the Plaintiff's original papers in support of those motions.

On April 6, 2006, Magistrate Judge Coan issued an Order (# 114) granting service by the U.S. Marshal, directing the Marshal to serve Defendants Hood, Chester, Zuercher, Werlich, Collins, and Madison with a copy of the Summons and Amended Complaint.  On April 19, 2006, Magistrate Judge Coan issued an Order (# 117) vacating the order directing service by Marshal, noting that the Defendants named in that order had already been served with the Summons and original Complaint, and that personal service of the Amended Complaint upon these Defendants was not necessary.  The following day, the Plaintiff's Objections (# 119) to Magistrate Judge Coan's original order directing service were filed.  Those Objections noted that defense counsel had remarked that Defendants Lappin, Watts, and Hershberger had not been properly served, and that the Plaintiff's request for service by the Marshal was directed at these Defendants, not those named in Magistrate Judge Coan's Order.  Thereafter, the Plaintiff also filed Objections (# 122) to Magistrate Judge Coan's April 19, 2006 Order vacating her earlier order directing service, asserting similar arguments.

Noting the defense of personal jurisdiction raised by Defendants Lappin, Watts, and Hershberger, the Plaintiff moves to transfer (# 123) the case to an unspecified jurisdiction in which those Defendants are amenable to suit.  *Citing* 28 U.S.C. § 1631.  The Plaintiff explains that his inability to identify the correct forum is a result of the fact that these Defendants' addresses are not available to him by operation of law and by the submission of those addresses by the Defendants to the Court under seal.

The Defendants filed two new motions to dismiss, this time directed at the Amended Complaint.  The first (# 124), made pursuant to Fed. R. Civ. P. 12(b)(6), requests dismissal on the grounds that: (i) to the extent that the Plaintiff asserts claims arising from acts prior to July 13,

6

2003, those claims are untimely; (ii) the Plaintiff failed to exhaust his administrative remedies in violation of 42 U.S.C. § 1997e(a); (iii) the Plaintiff fails to allege personal participation or knowing acquiescence by the Defendants; (iv) the Plaintiff fails to adequately allege an Eighth Amendment violation, in that the Plaintiff's mere exposure to secondhand smoke in the past does not constitute a serious injury, and that a claim founded upon speculative future health risks requires proof of a degree of exposure to smoke that is unreasonable; (v) the Plaintiff fails to allege facts showing that the Defendants subjectively believed that the Plaintiff was being exposed to harm; and (vi) the Defendants are entitled to qualified immunity, in that the Plaintiff fails to state a claim for a constitutional deprivation, and that his right to a smoke-free environment was not clearly established at the time of the charged conduct.  In the Defendants' second **(# 125)** motion to dismiss the Amended Complaint, Defendants Lappin, Watts, and Hershberger repeat their contention that the Court lacks personal jurisdiction over them.

## ANALYSIS

### A.  Standard of review

At all times, the Court construes the Plaintiff's *pro se* pleadings liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).  In other words, if the Court if can reasonably read the pleadings to state a valid claim on which the Plaintiff could prevail, it should do so despite the Plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.  *Hall*, 935 F.2d at 1110.  However, *pro se* status does not relieve the Plaintiff from the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court

will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court.  *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

### B.  Motions to Dismiss

#### 1.  Under Fed. R. Civ. P. 12(b)(1)

The Defendants originally moved to "dismiss" certain jurisdictional allegations in the Complaint, and to dismiss a claim founded on international law.  The Plaintiff subsequently amended the Complaint and the challenged material does not appear in the Amended Complaint. Accordingly, the Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) **(# 49)** is denied as moot.

#### 2.  Under Fed. R. Civ. P. 12(b)(2)

Defendants Lappin, Watts, and Hershberger contend that the Court lacks personal jurisdiction over them.  As described in the Amended Complaint, Defendant Lappin is the Director of the Federal Bureau of Prisons, with an address located in Washington, D.C. Defendant Watts is the National Inmate Appeals Administrator, is located in Washington, D.C., and is responsible for "reviewing, investigating, and responding to Central Office Administrative Remedy Appeals" filed by Bureau of Prisons inmates.   Defendant Hershberger is the North Central Regional Director of the Bureau of Prisons, is located in Washington, D.C., and is responsible for "reviewing, investigating, and responding to Regional Administrative Remedy Appeals" filed by Bureau of Prisons inmates.  All three Defendants contend that the Court lacks personal jurisdiction over them because they do not reside in Colorado and have no meaningful contacts with the State of Colorado.

In a Motion to Dismiss pursuant to Rule 12(b)(2), the Plaintiff bears the burden of establishing that personal jurisdiction exists. *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999); *Omi Holdings, Inc. v. Royal Ins. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Where a court chooses not to conduct an evidentiary hearing, the Plaintiff need only make a *prima facie* showing of jurisdiction by showing, through affidavits or otherwise, facts that, if true, would support jurisdiction over the Defendants. *Omi Holdings*, 149 F.3d at 1091 *Soma*, 196 F.3d at 1295. The allegations of a complaint must be taken as true unless contradicted by the Defendant's affidavits, *Behagen v. Amateur Basketball Ass'n. of U.S.A.*, 744 F.2d 731, 733 (10th Cir.1984), and to the extent that the affidavits contradict allegations in the complaint or opposing affidavits, all disputes must be resolved in the Plaintiff's favor and the Plaintiff's *prima facie* showing is sufficient. *Id.*

Whether this Court has personal jurisdiction over a Defendant requires a two-pronged inquiry: (i) whether the Defendant would be subject to the jurisdiction of a court of general jurisdiction in the State of Colorado; and (ii) whether the exercise of personal jurisdiction over the Defendant would offend the Due Process clause of the Fourteenth Amendment. *U.S. v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002). Colorado state law permits the exercise of personal jurisdiction to the extent consistent with the U.S. Constitution. *Brownlow v. Aman*, 740 F.2d 1476, 1481 (10th Cir. 1984). Thus, the two-pronged analysis collapses into a single inquiry as to whether the exercise of personal jurisdiction over these Defendants offends Due Process. *Botefuhr*, 309 F.3d at 1271. To satisfy the Due Process clause, the Defendant over whom personal jurisdiction is sought must have sufficient minimal contacts with the State of Colorado

such that it can be said that he has "purposefully availed" himself of the protection and benefits of the laws of Colorado. *Botefuhr*, 309 F.3d at 1272.

The Plaintiff has not come forward with affidavits or other evidence demonstrating the extent of these Defendants' contacts with the State of Colorado. His responses do contain unsworn factual assertions that, for purposes of this Motion, the Court will treat as an affidavit. The Plaintiff contends that Defendants Watts and Hershberger signed off on denials of the Plaintiff's grievances, and further asserts in conclusory and speculative terms that each Defendant, by virtue of his duties, must have made telephone calls, sent letters and memos, and traveled into Colorado.[7]

The Plaintiff's demonstration of the extent of the Defendants' contacts with Colorado is insufficient to carry his burden of establishing that they purposefully availed themselves of the benefits of Colorado's laws. Rather, the contacts of Defendants Watts and Hershberger with Colorado are completely fortuitous, resulting from the fact that the <u>Plaintiff</u> – to whom they were responding when answering grievances – was located in Colorado. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (defendant's contacts with state must be purposeful, not "random, fortuitous, or attenuated"). The Plaintiff's conclusory assertions that Defendants Watts and Hershberger must have made telephone calls and sent letters into Colorado is mere speculation. Accordingly, the Court finds that the Plaintiff has not established that it has personal jurisdiction over Defendants Watts and Hershberger.

---

[7]The Plaintiff requests "jurisdictional discovery" to substantiate his allegations as to the nature and extent of the Defendants' contacts with Colorado. The Court will address that request separately below.

Similarly, the mere fact that Defendant Lappin, as Director of the Bureau of Prisons, oversees prisons located in Colorado is insufficient to establish a basis for the exercise of personal jurisdiction over him in Colorado.  *See e.g. Nwanze v. Philip Morris, Inc.*, 100 F.Supp.2d 215, 220 (S.D.N.Y. 2000) ("Mere supervision over the Bureau of Prisons, the reach of which extends into every state, is insufficient to establish a basis for the exercise of personal jurisdiction").  Once again, the Plaintiff's speculation as to the extent to which Defendant Lappin maintains contacts within the State of Colorado is insufficient to carry his burden of establishing the existence of personal jurisdiction.[8]

Thus, Defendants Lappin, Watts, and Hershberger's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) (**# 125**)[9] is granted, and the claim against those Defendants is dismissed for lack of personal jurisdiction.

---

[8]The Court notes that its conclusion is consistent with the unpublished opinion of the 10th Circuit on this identical issue in *Hill v. Pugh*, 75 Fed.Appx. 715, 719 (10th Cir. 2003) ("It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state.").  In that case, the 10th Circuit affirmed the dismissal of an ADX inmate's claims against Defendant Hershberger and Defendant Lappin's predecessor for lack of personal jurisdiction, despite the fact that they had been involved with the inmate's administrative grievances.  Given its unpublished status, the Court does not rely on *Hill* for any precedential value, *see* 10th Cir. R. 36.3(a), but cites it solely for its close similarities to the legal and factual issues pending here, and the recognition that the result reached independently by this Court is identical.  Pursuant to 10th Cir. R. 36.3(c), a copy of *Hill* is attached hereto.

[9]Docket # 50, the same motion directed at the original Complaint, is denied as moot.

### 3.  Under Fed. R. Civ. P. 12(b)(6)

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Amended Complaint as true and view those allegations in the light most favorable to the Plaintiff.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The Amended Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed.  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

### a.  Statute of Limitations

The Defendants first argue that the Plaintiff's claims, to the extent they allege conduct occurring prior to July 13, 2003, is untimely.  Notably, the Defendants do not contend that the Plaintiff's sole claim is untimely in its entirety.  Such a contention is plainly untenable, as the Amended Complaint clearly alleges that the Plaintiff has been at ADX since 2001, and the Defendants acknowledge that ADX did not completely eliminate indoor smoking until September 24, 2004.  Construing these facts in the light most favorably to the Plaintiff, it is clear that some of

the events complained of by the Plaintiff fall within the statute of limitations.  Thus, dismissal of the Plaintiff's claim on this ground is inappropriate.[10]

### b.  Exhaustion

Pursuant to 42 U.S.C. § 1997e(a), an inmate must fully exhaust available administrative remedies before commencing suit in federal court.  The burden of showing exhaustion is on the Plaintiff, to be established by either attaching copies of documents showing complete exhaustion, or by identifying with specificity the procedures invoked and their outcome.  *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1209-10 (10th Cir. 2003).

An inmate's grievances do not have to specifically articulate legal theories, but must be sufficiently specific as to the nature of the grievance to give prison officials notice of the type of problem of which the inmate complains.  *See Johnson v. Johnson*, 385 F.3d 503, 517-18 and n. 9 (5th Cir. 2004), *citing Porter*, 534 U.S. at 525 (one purpose of exhaustion requirement is to create an "administrative record that clarifies the contours of the controversy"); *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003).  Similarly, although the grievance does not have to identify involved individuals with precision, particularly where the inmate complains of systemic problems, but where discrete acts are involved, the inmate may be required to identify, by name or function, the responsible individual(s).  *Johnson*, 385 F.3d at 522-23.

---

[10]The Court presumes that, although they have sought relief in the form of dismissal, the Defendants actually present the statute of limitations argument in the hope that the Court will affirmatively acknowledge July 13, 2003 as the outer temporal boundary in this case.  The Court declines to do so.  Fed. R. Civ. P. 12(b)(6) does not contemplate dismissal of portions of claims, and it is difficult to say, at this early stage of the litigation, whether the Plaintiff's statute of limitations may be subject to legal doctrines that might adjust the date upon which it commences. It is sufficient to note that at least some of the conduct complained of is timely, and if the Plaintiff ultimately prevails on the merits, the Court will not award relief for events occurring outside of the applicable statute of limitations.

The Bureau of Prisons maintains a four-step administrative remedy program, by which inmates may raise grievances.  28 C.F.R. § 542.10 *et seq.*  In Step 1, the inmate must attempt informal resolution of his concern with the appropriate Bureau of Prisons staff member.  28 C.F.R. § 542.13.  Assuming no satisfactory resolution is achieved at this first step, the inmate must proceed to Step 2 and file an Administrative Remedy Request (Form BP-9) within 20 calendar days of the event giving rise to the grievance.  28 C.F.R. § 542.14.  If the inmate is dissatisfied with the result of the Step 2 grievance, the inmate must proceed to Step 3 by filing  an appeal to the Regional Director within 20 days of the denial of the Step 2 request. 28 C.F.R. § 542.15(a).  The appeal must be on form BP-10, and attach a copy of the Step 2 request. Each denied grievance must be pursued in a separate appeal; appeals cannot be combined.  *Id.*  If the Step 3 appeal is unsuccessful, the inmate must proceed to Step 4 by filing an appeal on Form BP-11 to the General Counsel within 30 days of the denial of the Step 3 request. 28 C.F.R. § 542.15(a).  The appeal to the General Counsel is the final administrative stage, and upon its conclusion the inmate has exhausted the available administrative remedy scheme.

The Plaintiff's Amended Complaint alleges that the Plaintiff exhausted this procedure by first raising the issue informally to Defendants Madison and Werlich.  *Docket* # 73, ¶ 18.   The Informal Resolution Form submitted by the Plaintiff stated that the Plaintiff was being exposed to secondhand smoke as a result of other inmates smoking in their cells, and complained of physical reactions has was having.  The Plaintiff cited two Bureau of Prisons policy statements, including one which requires the Warden to ensure that smoking areas be properly identified.  Defendants Madison and Werlich responded that policies had designated individual cells as smoking areas, and noted that there were "established procedures to protect you from secondhand smoke."

14

Thereafter, the Plaintiff commenced Step 2 by filling what was ultimately denominated as Grievance No. 315155 on October 26, 2003. *Id.*, ¶ 19.[11]  That grievance reiterates the same information contained on the Informal Resolution Form.  The Plaintiff's Step 2 grievance was denied by Defendant Hood, the Warden of ADX, on November 7, 2003.  Defendant Hood's denial repeats Defendant Madison and Werlich's finding that individual cells are properly designated as smoking areas, and that the facility does not offer a non-smoking unit.  On November 17, 2003, he filed his Step 3 appeal. *Id.*, ¶ 20.  That appeal noted that Defendant Hood's Step 2 response did not address the failure to install signage designating individual cells as smoking areas, in violation of Bureau of Prisons policies; that the response did not address a Bureau of Prisons policy prohibiting smoking in congested areas or areas with inadequate ventilation; and that the Plaintiff was suffering physical discomfort as a result of being exposed to the smoke.  On December 8, 2003, Defendant Hershberger responded, stating that Defendant Hood's response was sufficient, that ADX does not offer a smoke-free housing unit, and that proper procedures were followed in responding to the Step 2 grievance.  On December 17, 2003, the Plaintiff filed his Step 4 appeal. *Id.*, ¶ 21.  That appeal repeated the Plaintiff's allegation that he was being exposed to smoke and suffering discomfort; noted that exposure to secondhand smoke "has been proven to cause severe health problems and possible a fatal disease of cancer"; claimed that unspecified federal laws and Bureau of Prisons policies were not being followed; and stated that such conduct constituted a violation of the Plaintiff's Eighth Amendment rights.  On

---

[11]The Amended Complaint alleges that copies of the Plaintiff's grievance and his various administrative appeals were attached to the Amended Complaint as Exhibit 1.  The document in the docket of this case has no such attachments.  However, copies of the grievance and appeals are attached to the original Complaint, and the Court will deem that exhibit to be attached to the Amended Complaint as well.

February 23, 2004, Defendant Watts responded, repeating, in substance, Defendant Hershberger's response, and encouraging the Plaintiff to contact staff "if you observe inmates violating these procedures."

There can be little dispute that the Plaintiff adequately exhausted his administrative remedies with regard to the subject matter of his case.  However, the Defendants contend that his exhaustion is inadequate as to each of them individually, because the Plaintiff did not identify them by name in his grievances.  However, the Plaintiff' complaint is not about a specific instance of conduct, for which it is a simple matter to identify the responsible actors, but about the Defendants' failure to properly apply Bureau of Prisons policies, for which identifying the persons responsible for correctly interpreting and implementing the policy is no simple matter.  In these circumstances, the requirement that the Plaintiff specifically identify the responsible parties by name is relaxed.[12] *Johnson*, 385 F.3d at 522-23.  Although the Defendants cite *Johnson* with approval, they do not explain why they believe that the Plaintiff's grievance here falls outside that case's observation that grievances that fail to identify particular individuals would nevertheless be sufficient to alter administrators as to problems regarding prison policies and practices.  *Id.* at 522 ("Johnson's grievances would alert administrators particularly to problems regarding the prison's housing and classification practices, but we do not think that they can fairly be read to alert them to . . . the discrete conduct that forms the basis of Johnson's claims against these two officers, which is of a different character").

---

[12]This is not to say that, because the Plaintiff challenges a systemic policy, he is relieved of the obligation to properly identify those who personally participate in the deprivation for pleading purposes.  That issue is dealt with below.

Accordingly, the Court finds that the Plaintiff adequately exhausted his claim under 42 U.S.C. § 1997e(a).

### c.  Personal Participation / Sufficiency of Claim

The Defendants contend both that the Plaintiff fails to adequately allege their personal participation in any deprivation, and that he fails to adequately state a claim.  Because personal participation is simply an element of the claim that the Plaintiff must allege, the Court will analyze both contentions in the context of whether the Plaintiff adequately states a claim.

The Eighth Amendment protects inmates against "cruel and unusual punishments."  A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate constitutes an Eighth Amendment violation.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Such a claim requires the Plaintiff to allege two elements: (i) that he was exposed to a "substantial risk of serious harm"; and (ii) that the Defendants were "deliberately indifferent" to that risk.  *Id.* at 834.

A "substantial risk of serious harm" may result from the need for medical attention to treat an illness or injury that the Plaintiff currently suffers from, or may result from the current exposure of the Plaintiff to conditions that pose a substantial risk of serious injury in the future. *Helling v. McKinney*, 509 U.S. 25, 34-35 (1993).  Indeed, in *Helling*, the Supreme Court expressly held that an inmate who alleges that prison officials had, with deliberate indifference, exposed him to levels of secondhand smoke that posed an unreasonable risk of serious damage to his future health stated an Eighth Amendment claim.  *Id.* at 35.  However, the Supreme Court in *Helling* was careful to note the exacting proof that would be required to establish this element.  It noted that the inmate would be required to prove that the amount of secondhand smoke he was

exposed to posed an risk of serious damage to his future health, 509 U.S. at 35, and also, to establish that the magnitude of that risk was of such a level that it violates contemporary standards of decency to expose <u>anyone</u> unwillingly to such a risk. *Id.* at 36.

To allege deliberate indifference, the Plaintiff must allege facts showing that a Defendant <u>both</u> knew of and disregarded an excessive risk to the Plaintiff's health or safety; in other words, the official must be aware of facts from which the inference could be drawn that the Plaintiff was in substantial risk, and the official must actually draw that inference. *Farmer*, 511 U.S. at 837. This element inquires into the prison official's subjective knowledge of the risk faced by the Plaintiff, including the severity of that risk. Thus, not only does the Plaintiff face an exacting test in establishing that, objectively, secondhand smoke poses a health risk that "not one that today's society chooses to tolerate," *Helling*, 509 U.S. at 36, but that the Defendants subjectively perceived the risk of secondhand smoke exposure to rise to that level.

It is axiomatic that *Bivens* claims of the type asserted by the Plaintiff can only be brought against those Defendants who personally participated in the alleged constitutional deprivation. *Steele*, 355 F.3d 1204, 1214 (10th Cir. 2003). Where the Defendant occupies a supervisory role, the Plaintiff cannot merely deem that Defendant vicariously liable for constitutional deprivations committed by his subordinates. Rather, the Plaintiff must allege facts showing a deliberate, intentional act by the supervisor that constitutes a constitutional deprivation. *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996). The Plaintiff may attempt to show that the supervisor directly participated in the deprivation, that he directed others to engage in the deprivation, or that he had actual knowledge that the Plaintiff constitutional rights were being deprived and that the Defendant acquiesced in the continuance of the conduct. *Id.*

To determine whether the Plaintiff has adequately alleged an Eighth Amendment violation against the remaining Defendants – Hood, Chester, Zuercher, Werlich, Collins, and Madison – the Court turns to the Amended Complaint. Defendant Hood is identified in the Amended Complaint as the Warden of ADX. The Plaintiff cites to Bureau of Prisons policies that specifically require the Warden of the facility to designate smoking and non-smoking areas. *Docket # 73, ¶ 11, citing* 28 C.F.R. § 551.164. The Plaintiff further cites to a Bureau of Prisons Program Statement from 1994 that observes that "[t]he risks posed to nonsmokers by passive inhalation of environmental tobacco smoke (ETS) are of particular concern," and goes on to describe the health concerns arising from secondhand smoke exposure. *Docket # 73, ¶ 16 & Ex. 5.* The Program Statement directs that all areas of prisons be smoke-free, except to the extent that the Warden designates them as smoking areas. *Id.* at Ex. 5. The Program Statement also prohibits the designation of areas "where ventilation systems may carry smoke to nonsmoking areas" as smoking areas. *Id.* Taken together with the Plaintiff's allegations as to the extent to which he was exposed to smoke while in his cell, the Amended Complaint adequately alleges that the Plaintiff's exposure to secondhand smoke was significant, and that it exposed him to a substantial risk of future physical harm. It also established that Defendant Hood, as Warden of ADX, was subjectively aware of the risks of secondhand smoke, insofar as one can reasonably infer that Defendant Hood was apprised of the Bureau of Prison's Program Statements. These allegations do not, however, establish that Defendant Hood was subjectively aware that the Plaintiff, in particular, was being exposed to secondhand smoke at a dangerous level. Nevertheless, the Plaintiff adequately alleges that it was Defendant Hood who responded to the Plaintiff's Step 2 grievance, thereby putting Defendant Hood on subjective notice of the actual risk of harm faced by the Plaintiff. Taking the facts in the

19

light most favorably to the Plaintiff, it was at this point that Defendant Hood became subjectively aware that the Plaintiff's Eighth Amendment rights were in jeopardy, and Defendant Hood's failure to act became an actionable constitutional deprivation.[13]  Thus, the Court finds that the Plaintiff has adequately stated a claim against Defendant Hood.

Defendant Chester is identified in the Amended Complaint as being Associate Warden of Programs, and has the responsibility of "overseeing the unit teams / case managers at the ADX." The Plaintiff does not identify any Bureau of Prisons policies that directly task an individual in Defendant Chester's position with responsibilities to interpret or implement smoking policies, nor can the Court necessarily infer that Defendant Chester, like Defendant Hood, receives Bureau of Prisons Program Statements.  Thus, the Amended Complaint does not allege, except perhaps in conclusory terms, Defendant Chester's subjective knowledge of the risks posed by secondhand smoke.  The Plaintiff does not allege that Defendant Chester has the ability designate smoking and non-smoking areas of ADX (much less allege that he has the authority to override such designations by the Warden), nor that Defendant Chester was actually aware of the Plaintiff's complaints.  The only references to Defendant Chester in the Amended Complaint are conclusory arguments that Defendant Chester has participated in certain acts or had certain motivations.[14]

---

[13]The Court will not speculate as to whether the Plaintiff can establish Defendant Hood's personal participation in any alleged constitutional deprivation prior to the Plaintiff's filing of a grievance.  It is sufficient at this time to find that the Plaintiff can state some form of a claim against Defendant Hood, as well as the other Defendants referenced herein.

[14]An allegation is conclusory if it reflects an inference that is deduced from certain facts without also stating those underlying facts.  For example, paragraph 39 states that "Defendants Zuercher and Chester were aware of and had actual knowledge of Plaintiff's conditions of confinement that posed unreasonable risks of serious future harm."  That these Defendants knew of a particular thing – the conditions of the Plaintiff's confinement, or the risks he was being exposed to – is a conclusion.  The underlying facts upon which that conclusion is based might be

*See e.g. Docket* # 73, ¶ 7, 37, 41.  Such conclusory allegations are insufficient to plead <u>facts</u> upon which Defendant Chester's personal participation can be asserted.  Accordingly, the Court finds that the Plaintiff has failed to adequately a claim against Defendant Chester, and the claim against him is dismissed.

Defendant Zuercher is identified in the Amended Complaint as Associate Warden of Operations, with the responsibility of "overseeing correctional services, facilities, and the safety department at ADX."  Like Defendant Chester, the only allegations against Defendant Zuercher in the Amended Complaint are conclusory.  The Plaintiff does not allege any particular facts sufficient to establish any of the elements of the Eighth Amendment claim as to Defendant Zuercher.  Thus, the claims against Defendant Zuercher are dismissed as well.

Defendant Werlich is the Unit Manager of the F Unit at ADX, responsible for "directing and managing . . . the unit's operation and security."  The Plaintiff specifically alleges that Defendant Werlich reviewed his Informal Resolution Form, including the Plaintiff's allegations that the designation of individual cells as smoking areas was inconsistent with Bureau of Prisons policies and that exposure to smoke was causing the Plaintiff physical discomfort.  Assuming that the Plaintiff's Step 1 grievance was sufficient to charge Defendant Werlich with investigating the grievance, the Court can infer that such an investigation into Bureau of Prisons policies would have led Defendant Werlich to review reviewed the 1994 Program Statement cited by the Plaintiff, and thus learned of the Bureau's concerns as to the risks of exposure to secondhand

---

that these Defendants personally viewed the conditions of the Plaintiff's confinement at certain times, or that the Defendants were notified of the nature of the conditions by the Plaintiff or by another individual.  Because the Plaintiff does not allege the <u>facts</u> upon which he believes that these Defendants were aware of the conditions, his allegation is conclusory.

smoke.  Such knowledge, coupled with the knowledge of the Plaintiff's complaint that he was being exposed to unreasonable levels of secondhand smoke because of inadequate ventilation, is sufficient to allege Defendant Werlich's knowledge of a potential Eighth Amendment violation. The Court further assumes that because Defendant Werlich was designated as the Step 1 contact for the Plaintiff, Defendant Werlich had the authority to resolve the Plaintiff's grievance in some manner.  Defendant Werlich's failure to do so could constitute acquiesence in the continued deprivation, and thus, the Plaintiff has stated a claim against Defendant Werlich.

Defendant Collins is the Unit Manager of K Unit at ADX, with duties similar to that of Defendant Werlich.  In paragraph 33 of the Amended Complaint, the Plaintiff alleges that Defendant Collins was responsible for ensuring that Bureau of Prisons policies were followed on K Unit, and that Defendant Collins disregarded those policies.  The remaining allegations against Defendant Collins are merely conclusory.  Most importantly, there is no allegation that Defendant Collins was ever informed of the Plaintiff's belief that he was being exposed to an unreasonable level of secondhand smoke, and thus, the Plaintiff has failed to adequately allege Defendant Collins' subjective knowledge of the risks facing the Plaintiff, and his deliberate disregard of them. Thus, the Plaintiff fails to state a claim against Defendant Collins.    Finally, Defendant Madison is identified as "Counselor of F Unit," and his responsibilities entail "reviewing, investigating, and responding to" Step 1 grievances.  As with Defendant Werlich, the Plaintiff's grievance to Defendant Madison was sufficient to charge Defendant Madison with the knowledge that the Plaintiff was being exposed to unreasonable levels of secondhand smoke, and to put Defendant Madison on inquiry notice of the Bureau of Prisons Program Statement noting the health hazards posed by such exposure.  Moreover, the Court can infer that, because Defendant Madison was

22

charged with responding to Step 1 grievances, he had the authority to remedy the Plaintiff's complaint, yet chose not to do so. This is sufficient to state a claim against Defendant Madison.

Accordingly, the Court finds that the Plaintiff has stated Eighth Amendment claims only as against Defendants Hood, Werlich, and Madison, and the claims against the remaining Defendants will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### d. Qualified Immunity

Each Defendant also seeks dismissal on the grounds of qualified immunity. Government officials are entitled to qualified immunity from liability for civil damages under *Bivens* when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Johnson v. Fankell*, 520 U.S. 911, 914 (1997) (qualified immunity applies in *Bivens* actions). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Once the Defendants raise the defense of qualified immunity in the context of a motion to dismiss, the Court must first determine whether the Plaintiff, taking his allegations in the light most favorably to him, has adequately asserted a violation of federal law. *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001); *see also Ramirez v. Dept of Corrections,* 222 F.3d 1238, 1244 (10th Cir. 2000). A court does not apply a heightened pleading standard with respect to a defendants' assertion of a qualified immunity defense but, rather, reviews the complaint under the traditional standards applicable to a motion to dismiss. *See Currier*, 242 F.3d at 916-917. As the foregoing discussion establishes, the Court finds that the Plaintiff has adequately alleged an Eighth Amendment claim against Defendants Hood, Werlich, and Collins.

Next, the Court must consider whether the rights allegedly violated were "clearly established" at the time of the Defendants' conduct.  A right is "clearly established" when its confines are sufficiently definite that a reasonable prison official in similar circumstances would recognize that his actions violate the Plaintiff's constitutional rights.  *Harlow*, 457 U.S. at 818. Typically, a right is considered "clearly established" if that right has been recognized by a court of binding authority in the particularized circumstances presented by the case.  *See e.g. Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004).  At the time of the conduct here, the Supreme Court's decision in *Helling*, that exposure to unreasonable amounts of secondhand smoke could constitute an Eighth Amendment violation, was nearly a decade old.  Although the Defendants distinguish *Helling* on its facts (non-smoker Helling was housed in a cell with a 5-pack per day smoker), it is nevertheless clear that *Helling* recognized that the Eighth Amendment was violated in the particular circumstances where an inmate was exposed to an unreasonable risk of harm as the result of excessive amounts of secondhand smoke. 509 U.S. at 35.  The Court finds that the rights invoked by the Plaintiff were clearly established at the time of the conduct, and the remaining Defendants are not entitled to qualified immunity.

### C.  Motion to Transfer

In response to Defendants Lappin, Watts, and Hershberger's claim that they fall outside the scope of this Court's personal jurisdiction, the Plaintiff requests that this Court transfer this case to another district where such jurisdiction could be asserted over these Defendants.  The Plaintiff's request is made pursuant to 28 U.S.C. § 1631, which states "whenever a civil action is filed . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or

appeal could have been brought . .  and the action or appeal shall proceed as if it had been filed in

. . . the court to which it is transferred."

At the outset, there is some reason to doubt that 28 U.S.C. § 1631 is intended to permit

transfers to ameliorate a lack of personal jurisdiction, rather than a lack of subject-matter

jurisdiction. *See e.g. Nose v. Rementer,* 610 F.Supp. 191, 192 n. 1 (D.Del. 1985) ("section 1631

appears from its legislative history to apply only to cases in which the transferor court lacks

subject matter jurisdiction"); *Lopez v. Heinauer*, 332 F.3d 507, 511 (8th Cir. 2003) ("The purpose

of the transfer statute is to aid parties who might be confused about which court has subject

matter jurisdiction") (emphasis added).  Indeed, the Court's research has revealed no case in

which a transfer under § 1631 was made to cure a defective allegation of personal jurisdiction; in

every reported case applying the transfer statute, the claim had been filed in a court lacking

appropriate subject-matter jurisdiction.

In any event, the Court finds that a transfer to, say, the District Court for the District of

Columbia so as to permit suit against Defendants Lappin, Watts, and Hershberger would not be

"in the interests of justice."  Upon a transfer under § 1631, the case proceeds "as if it had been

filed" in the transferee court.  However, if the Plaintiff had originally commenced this action in the

District Court for the District of Columbia so as to obtain personal jurisdiction over Defendants

Lappin, Watts, and Hershberger, it is highly likely that Defendants Hood, Werlich, and Madison –

presumably, all Colorado residents –  could have successfully argued that that court lacked

personal jurisdiction over them.  In essence, then, a transfer pursuant to § 1631 would just be a

matter of substituting one set of Defendants for another.  The Plaintiff does not point to any

apparent particular benefit that would arise from litigating in the District of Columbia against

those Defendants, as opposed to litigating in Colorado against these Defendants.  Indeed, because the exposure the Plaintiff complains of occurred at ADX in Colorado, as a direct result of the actions of Defendants Hood, Werlich, and Madison, a transfer of the case to the District of Columbia would needlessly attenuate the parties from the proof.  Accordingly, the Court finds that the interests of justice do not warrant a transfer, and the Plaintiff's motion is denied.

### D.  Magistrate Objections

The remaining issues involve the Plaintiff's Objections to various rulings of the Magistrate Judges.  In each case, the Magistrate Judge's rulings were on non-dispositive matters, and thus, the Court will reverse those rulings only if they are clearly erroneous or contrary to law.  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996).  Accordingly, the objections will be overruled unless the Court finds that the Magistrate Judge abused his discretion or, if after viewing the record as a whole, the Court is left with a "definite and firm conviction that a mistake has been made."  *Ariza,* 167 F.R.D. at 133, *citing Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988).

#### 1.  November 22, 2005 Order denying appointment of counsel

The Plaintiff objects to an Order by Magistrate Judge Schlatter denying his motion for appointment of counsel.  The Court has reviewed that Order and finds that the Magistrate Judge did not abuse his discretion.  Delaying the appointment of counsel until a claim has survived an initial motion to dismiss is often a sound practice, and the Plaintiff does not complain that he was unable to adequately respond to the Defendants motions to dismiss without the aid of counsel.

Indeed, the Plaintiff demonstrates a mastery of law and procedure that is unusual in inmate litigation.  Accordingly, the Plaintiff's Objections are overruled.

Nevertheless, Magistrate Judge Schlatter's denial of counsel was done without prejudice, leaving the Plaintiff free to reapply for appointment of counsel now that some of his claims have survived Rule 12 scrutiny.  To forestall the need for additional motion practice, this Court will consider appointment anew.  As discussed above, although the legal issues presented in this case are relatively straightforward, the Plaintiff faces a formidable burden in proving certain aspects of his claim.  Of particular note, he will be required to demonstrate the particular extent to which exposure to secondhand smoke is recognized to pose health risks, and to show the extent to which society has chosen to tolerate those risks.  These matters will likely require forms of proof, scientific and otherwise, that would be extraordinarily difficult for an inmate in highly restrictive custody to obtain on his own.  Accordingly, the Court finds the Plaintiff eligible for appointment of counsel.

As the Court has previously advised the Plaintiff, however, notwithstanding the Court's findings, there is no guarantee that counsel will actually appear on the Plaintiff's behalf.  In civil cases, appointed counsel serve voluntarily and such counsel are neither compelled to take a case, nor compensated for their time or expenses by the Court.  The Court will direct that its panel of qualified attorneys interested in taking cases *pro bono* be canvassed to determine whether any are interested in volunteering to represent the Plaintiff in this case, and if a *pro bono* attorney volunteers to take the case, in which even he or she can enter an appearance on behalf of the Plaintiff.  In such event, counsel will file all further papers in this action, and the Court will not entertain *pro se* motions by a party who is represented by counsel.  In the event no *pro bono*

counsel volunteers to take the case, the Court cannot compel an attorney to represent the Plaintiff, and the Plaintiff will have no choice by to continue to represent himself, with all of the attendant disadvantages that result.

Moreover, unless and until an attorney files an appearance on behalf of the Plaintiff, the Plaintiff remains responsible for pursuing this case and complying with any established deadlines and schedules. Because there is no guarantee that any *pro bono* counsel will volunteer to represent the Plaintiff, the Court will not extend any deadlines or grant any continuances for the purpose of awaiting the potential appearance of counsel.

### 2. November 28, 2005 Order regarding ascertainment of proper service

The Plaintiff objects to an Order by Magistrate Judge Schlatter denying the Plaintiff's motion to ascertain whether all Defendants were properly served. The Court need not reach the merits of the Plaintiff's Objections, as it is clear that returns of service as to each of the remaining Defendants have been filed (**# 19, 28, 29**), and none of the Defendants has raised the defense of improper service. By operation of Fed. R. Civ. P. 12(h)(1), any such defense would be waived in any event. Accordingly, the Plaintiff's Objections to this Order are overruled as moot.

### 3. March 13, 2006 Order denying various motions

The Plaintiff Objects to the March 13, 2006 Order of Magistrate Judge Coan insofar as that order denied his motions to conduct jurisdictional discovery, denial his motions to take judicial notice of certain facts, and denied his motion to strike filings by the Defendants' counsel on the grounds that they lacked authority to represent certain Defendants. Notably, the Plaintiff did not specifically address any defects in the Magistrate Judge's Order with regard to the first two issues, and instead simply referred the Court back to his briefing on the underlying motions.

A party's objections to a Magistrate Judge's rulings must be sufficiently specific to focus this Court's attention on the particular facts or law on which the Magistrate Judge allegedly erred. *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059-60 (10th Cir.1996); *see also Johnson v. Zema Systems, Corp.*, 170 F.3d 734, 741 (7th Cir. 1999) (party must, at a minimum, specify each issue for which review is sought).  Merely referring the Court to the party's prior briefs in their entirety is insufficient.  *See e.g. Oliverson v. West Valley City*, 875 F.Supp. 1465, 1467 (D. Utah 1995).  Accordingly, the Court finds that the Plaintiff has failed to preserve any objections as to the Magistrate Judge's denial of his request for jurisdictional discovery and request for judicial notice.

The Plaintiff does engage in some identification of the issues with regard to the denial of his motion to strike, and thus, the Court will review that portion of the Magistrate Judge's Order. However, upon review, the Court finds that the Magistrate Judge's error is not clearly erroneous or contrary to law.  The Plaintiff moves to strike filings by the Defendants' counsel on behalf of Defendant Hershberger for which counsel only had "conditional" authority to enter an appearance.  So long as counsel purports to appear on behalf of a party, the Court has doubts as to the Plaintiff's standing to object to the <u>extent</u> of that authority.  Moreover, in response to the Plaintiff's Objections, the Defendants' counsel states that they now have full authority to represent Defendant Hershberger.  From that, the Court infers that Defendant Hershberger has retroactively authorized counsel to make such representations as were made conditionally on his behalf previously; otherwise, the Court would expect that counsel would withdraw any such representations made on Defendant Hershberger's behalf without sufficient authority. Accordingly, the Court finds that the Magistrate Judge did not err in refusing to strike the

29

challenged pleadings.  In any event, because the matter related to filings by Defendant

Hershberger, and the Court finds that it lacks personal jurisdiction over him, the Plaintiff's motion

to strike is also moot.  Accordingly, the Plaintiff's Objections are overruled.

#### 4.  April 6, 2006 and April 19, 2006 Orders

The Plaintiff objects to two Orders of Magistrate Judge Coan relating to effectuating

service of process on Defendants Lappin, Watts, and Hershberger.  Because those Defendants

have been dismissed from the case, the Plaintiff's Objections are denied as moot.

### E.  Motion to Correct Docketing Discrepancies

The Plaintiff moves to correct certain errors made in docketing.  Because the Court *sua*

*sponte* directs the Clerk of the Court to correct the errors cited herein, the Plaintiff's motion is

denied as moot.

### <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiff's Objections **(# 48)** to the November 22, 2005

Order **(# 45)** of United States Magistrate Judge O. Edward Schlatter denying the Plaintiff's

Motion to Appoint Counsel **(# 40)** are **OVERRULED**.  However, the Court *sua sponte* finds the

Plaintiff eligible for appointment of counsel and **directs the Clerk of the Court to canvas the**

***pro bono* panel to determine whether any attorney volunteers to represent the Plaintiff**.

The Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) **(# 49)**,

Defendants Hershberger, Lappin, and Watts' Motion to Dismiss Pursuant to Fed. R. Civ. P.

12(b)(2) **(# 50)**, and the Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) **(#**

**55)** are **DENIED AS MOOT** as a result of the Plaintiff filing the Amended Complaint.

The Plaintiff's Objections (**# 54**) to the November 29, 2005 Minute Order (**# 47**) of Magistrate Judge Schlatter denying the Plaintiff's Motion to Ascertain if Each Defendant Has Been Properly Served (**# 43**) are **OVERRULED** as moot.

The Plaintiff's Motion for Order to Correct Discrepancies in the Docket (**# 101**) is **DENIED AS MOOT**. **However, the Court directs that the Clerk of the Court correct the erroneous docket entries identified in the footnotes herein.**

The Plaintiff's Objections (**# 112**) to the March 13, 2006 Order (**# 103**) of United States Magistrate Judge Patricia A. Coan denying various motions by the Plaintiff are **OVERRULED**.

The Plaintiff's Objections (**# 119**) to the April 6, 2006 Order (**# 114**) of Magistrate Judge Coan directing service of process and the Plaintiff's Objections (**# 122**) to the April 19, 2006 Order (**# 117**) of Magistrate Judge Coan vacating her April 6, 2006 Order directing service are **OVERRULED** as moot.

The Plaintiff's Motion to Transfer the Case (**# 123**) is **DENIED**.

The Defendants' Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (**# 124**) is **GRANTED IN PART**, insofar as the claims against Defendants Chester, Zuercher, and Collins are **DISMISSED**, and **DENIED IN PART**, insofar as the Plaintiff adequately states a claim against Defendants Hood, Werlich, and Madison.

Defendant Lappin, Watts, and Hershberger's Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) (**# 125**) is **GRANTED**, and the claims against those Defendants are **DISMISSED**.

**The Clerk of the Court shall amend the caption of this case to omit all Defendants other than Defendants Hood, Werlich, and Madison.** The parties shall use the amended caption on all future pleadings.

The Plaintiff's Emergency Motion for Extension of Time to Respond **(# 132)** is **DENIED AS MOOT**.

Dated this 21st day of September, 2006

**BY THE COURT:**

Marcia S. Krieger
United States District Judge

This case was not selected for publication in the Federal Reporter. Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,Tenth Circuit.

Ernest Jack HILL, III, Plaintiff-Appellant,

v.

Michael V. PUGH, Warden;  G.L. Hershberger, Regional Director, B.O.P.;  Kathleen Hawk-Sawyer, Director, B.O.P., Defendants-Appellees.

**No. 02-1561.**

Sept. 11, 2003.

Federal prisoner brought *Bivens* action, asserting that prison officials subjected him to unnecessary solitary confinement and sensory deprivation, by placing him in maximum security facility, in violation of his Eighth Amendment rights, and Fifth Amendment due process and equal protection rights. The United States District Court for the District of Colorado dismissed action. Prisoner appealed. The Court of Appeals, McConnell, Circuit Judge, held that: (1) District Court lacked personal jurisdiction over out-of-state regional director of federal Bureau of Prisons, and national director of federal Bureau of Prisons; (2) prison officials were entitled to absolute immunity from liability for money damages; and (3) allegations did not state claim for violation of due process, equal protection, or Eighth Amendment rights.

Affirmed.

West Headnotes

**[1] United States 393 ☞50.20**

393 United States
   393I Government in General
      393k50 Liabilities of Officers or Agents for Negligence or Misconduct
         393k50.20 k. Actions. Most Cited Cases

**United States 393 ☞127(2)**

393 United States
   393IX Actions

      393k127 Rights of Action Against United States or United States Officers
         393k127(2) k. Prior Administrative Claim. Most Cited Cases
Federal prisoner was not entitled to amend his complaint against prison officials to include a claim under the Federal Tort Claims Act (FTCA), where prisoner failed to exhaust his administrative remedies, and motion was untimely and made after undue delay. 28 U.S.C.A. § 2675(a);  Fed.Rules Civ.Proc.Rule 15, 28 U.S.C.A.

**[2] United States 393 ☞50.20**

393 United States
   393I Government in General
      393k50 Liabilities of Officers or Agents for Negligence or Misconduct
         393k50.20 k. Actions. Most Cited Cases
District Court lacked personal jurisdiction over out-of-state regional director of federal Bureau of Prisons, and national director of federal Bureau of Prisons, for purposes of federal prisoner's *Bivens* action; although regional director and director allegedly had overall responsibility for Bureau of Prisons operations in forum state, they did not purposely avail themselves of protection and benefits of laws of forum state.

**[3] United States 393 ☞50.10(3)**

393 United States
   393I Government in General
      393k50 Liabilities of Officers or Agents for Negligence or Misconduct
        393k50.10 Particular Acts or Claims
           393k50.10(3) k. Criminal Law Enforcement and Investigation;  Prisoners' Claims. Most Cited Cases
Federal prison officials were entitled to absolute immunity from liability for money damages, in prisoner's *Bivens* action, asserting violation of his due process rights, equal protection rights, and Eighth Amendment rights.

**[4] Constitutional Law 92 ☞272(2)**

92 Constitutional Law
   92XII Due Process of Law
      92k256 Criminal Prosecutions
         92k272 Execution of Sentence

92k272(2) k. Imprisonment and Incidents Thereof. Most Cited Cases

### Prisons 310 ⌒13(5)

310 Prisons
    310k13 Custody and Control of Prisoners
        310k13(5) k. Segregation and Solitary Confinement;  Classification. Most Cited Cases

### Prisons 310 ⌒17(2)

310 Prisons
    310k17 Maintenance and Care of Prisoners
        310k17(2) k. Medical and Mental Care. Most Cited Cases
Allegations by federal prisoner that prison officials subjected him to unnecessary solitary confinement and sensory deprivation in disregard of his history of mental illness and without adequate psychiatric care did not involve an atypical, significant hardship upon him in relation to the ordinary incidents of prison life, and thus did not state claim for violation of his due process rights.  U.S.C.A. Const.Amend. 5.

### [5] Constitutional Law 92 ⌒250.3(2)

92 Constitutional Law
    92XI Equal Protection of Laws
        92k250 Criminal Offenses and Prosecutions
            92k250.3 Punishment
                92k250.3(2) k. Execution of Sentence, Parole, and Probation. Most Cited Cases

### Prisons 310 ⌒13(8)

310 Prisons
    310k13 Custody and Control of Prisoners
        310k13(7) Requisites of Proceedings
            310k13(8) k. Notice and Hearing;  Summary Proceedings. Most Cited Cases
Federal prisoner's placement in maximum security federal prison facility, without hearing opportunity provided for other prisoners that are placed in control unit within facility for disciplinary reasons, was rationally related to legitimate penological concern, in light of prisoner's convictions for bank fraud, wire fraud and money laundering offenses while imprisoned at another facility;  thus, placement did not violate equal protection. U.S.C.A. Const.Amend. 5.

### [6] Prisons 310 ⌒13(5)

310 Prisons
    310k13 Custody and Control of Prisoners
        310k13(5) k. Segregation and Solitary Confinement;  Classification. Most Cited Cases

### Sentencing and Punishment 350H ⌒1553

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1553 k. Segregated or Solitary Confinement. Most Cited Cases
Allegations by federal prisoner that his placement in maximum security prison subjected him to isolation in his cell, except for one hour per day, and that the confinement resulted in sensory deprivation did not state claim for violation of the Eighth Amendment, where prisoner admitted that his minimal physical requirements for food, clothing, and shelter were met. U.S.C.A. Const.Amend. 8.

**716** Ernest Jack Hill, III, Florence, CO, for Plaintiff-Appellant.
Martha Ann Paluch, John W. Suthers, U.S. Attorney, Joe Benedict Garcia, Office of the United States Attorney, Denver, CO, for Defendants-Appellees.

Before HARTZ, BALDOCK, and McCONNELL, Circuit Judges.

### ORDER AND JUDGMENT[FN*]

        FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

McCONNELL, Circuit Judge.
**1 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially**717** assist the determination of this appeal.  See Fed. R.App. P.

34(a)(2);  10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Ernest Jack Hill, a prisoner in the general population of the United States Penitentiary, Administrative Maximum, Florence, Colorado (ADX) appeals the district court's dismissal of his civil rights action.  We affirm.

In his amended complaint, Mr. Hill alleged jurisdiction under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and 28 U.S.C. § 1331, and asserted that defendants have subjected him to unnecessary solitary confinement and sensory deprivation in disregard of his history of mental illness.[FN1]  Mr. Hill claimed that:  (1) his conditions of confinement and the facility's lack of adequate psychiatric care violated his Eighth Amendment right to be free from cruel and unusual punishment;  (2) the same circumstances violated his due-process and equal-protection rights under the Fifth Amendment; and (3) defendants failed to comply with Federal Bureau of Prisons' regulations, in contravention of the Administrative Procedures Act (APA).[FN2]  He sought money damages and injunctive relief.  On appeal, Mr. Hill challenges the district court's multiple reasons for granting defendants' motion to dismiss.  [FN3]

> FN1. We refer to Mr. Hill's complaint, R., Vol. 1, Doc. 22;  his addendum to complaint, *id.,* Doc. 23;  and his clarification and supplement, *id.,* Vol. 2, Doc. 55, as the "amended complaint."

> FN2. The amended complaint also advanced a claim of retaliation for seeking redress in the courts and claims under 42 U.S.C. § 1983, the International Covenant on Civil and Political Rights, and the United Nations Convention Against Torture.  On appeal, Mr. Hill does not raise any meaningful arguments concerning these claims and, as a consequence, we do not address them.

> FN3. In a lengthy and thoughtful ruling, the magistrate judge recommended granting defendants' motion to dismiss.  The district court conducted a de novo review, then

adopted the magistrate judge's recommendation.

We first address Mr. Hill's procedural attacks on the district court's denial of his motion to amend and the basis for its rulings under Fed.R.Civ.P. 12(b)(6).  The resolution of these issues affects the scope of our review of his remaining claims.

With his motion to amend, Mr. Hill sought to substitute a claim under the Federal Tort Claims Act (FTCA) for his APA claim, to supply further allegations concerning defendants' personal participation in Mr. Hill's mental-health care, and to name additional defendants.  We review the district court's decision to deny leave to amend a complaint for abuse of discretion.  *Ben Ezra, Weinstein, & Co. v. America Online Inc.,* 206 F.3d 980, 987 (10th Cir.2000).

Concerning the addition of an FTCA claim, we note that Mr. Hill filed his amended complaint before he had satisfied the FTCA requirement of exhaustion of administrative remedies.  *See* 28 U.S.C. § 2675(a). In FTCA actions,

as a general rule, a premature complaint cannot be cured through amendment, but instead, plaintiff must file a new suit.  Allowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system.

*Duplan v. Harper,* 188 F.3d 1195, 1199 (10th Cir.1999) (quotation and citation omitted).  The district court did not abuse **\*718** its discretion in denying Mr. Hill's motion to add an FTCA claim.

**\*\*2** [1] Further, the district court denied the motion to amend on grounds of untimeliness and undue delay. "Where [a] party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."  *Parker v. Champion,* 148 F.3d 1219, 1222 (10th Cir.1998) (alteration in original, quotation omitted).  The denial of Mr. Hill's motion to amend was well within the district court's discretion, particularly in light of its liberality in accepting Mr.

35

Hill's addendum to complaint and his clarification and supplement of the complaint.

Thus, the claims, allegations, and defendants included only in Mr. Hill's motion to amend have no part in this court's review.   As a consequence, and as Mr. Hill essentially concedes, he has no valid FTCA claim for defendants' alleged disregard of prison regulations or Eighth Amendment claim relating to allegedly inadequate mental-health care.

The second procedural matter is Mr. Hill's contention that the district court considered evidentiary matters outside the amended complaint and, therefore, it should have converted defendants' dismissal motion into a summary judgment motion.  *See* Fed.R.Civ.P. 12(b).  This argument is based entirely on a footnote in the court's discussion of defendants' Rule 12(b)(6) motion referring to information presented during a hearing on Mr. Hill's motion for a temporary restraining order.  *See* R., Vol. 5, Doc. 201, at 25, n. 6.

"A motion to dismiss for failure to state a claim upon which relief can be granted must be converted into a motion for summary judgment whenever the district court considers matters outside the pleadings." *Lowe v. Town of Fairland,* 143 F.3d 1378, 1381 (10th Cir.1998).   "Reversible error may occur … if the district court considers matters outside the pleadings but fails to convert the motion to dismiss into a motion for summary judgment." *Id.* Nevertheless, a district court's consideration of matters outside the pleadings may be harmless if the dismissal can be justified under Rule 12(b)(6) without reference to matters outside of the pleadings.  *Id.* In evaluating the district court's Rule 12(b)(6) rulings, therefore, this court is confined to the allegations in Mr. Hill's amended complaint.

Having resolved Mr. Hill's preliminary issues, we next consider the sufficiency of his complaint, reviewing de novo the district court's dismissals under Rule 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim for which relief may be granted. *Soma Med. Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir.1999) (concerning dismissals under Rule 12(b)(2)); *Ordinance 59 Ass'n v. United States Dep't of Interior Sec'y,* 163 F.3d 1150, 1152 (10th Cir.1998) (concerning dismissals under Rule 12(b)(1) and 12(b)(6)).   Because Mr. Hill is

proceeding pro se, we construe his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam).

**\*\*3** " 'Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them.'" *Gadlin v. Sybron Int'l Corp.,* 222 F.3d 797, 799 (10th Cir.2000) (quoting *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)).  " '[T]here is no unyielding jurisdictional hierarchy' requiring federal courts to sequence one jurisdictional issue before the other." *Id.* **\*719** (quoting *Ruhrgas AG,* 526 U.S. at 578, 119 S.Ct. 1563).

In this case, the district court first examined whether it had personal jurisdiction over nonresident defendants G.L. Hershberger, the Regional Director for the North Central Region of the Bureau of Prisons in Kansas City, Kansas, and Katherine Hawk-Sawyer, the Director of the Federal Bureau of Prisons, whose office is in Washington, D.C. Jurisdictional requirements are satisfied if, "after reviewing the defendant[s'] interactions and connections with the forum state, the court can conclude" that defendants "purposefully availed [themselves] of the protection and benefits of the laws" of Colorado, the forum state. *United States v. Botefuhr,* 309 F.3d 1263, 1272 (10th Cir.2002) (quotation omitted).  "[T]he mere foreseeability of causing injury in another state" is insufficient to establish the required contacts. *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1534 (10th Cir.1996) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

[2] Mr. Hill's amended complaint alleges that Mr. Hershberger and Ms. Hawk-Sawyer have overall responsibility for Bureau of Prisons' operations in Colorado and that Mr. Hershberger, with the consent of Ms. Hawk-Sawyer, had authority over assignment of prisoners to ADX. It also alleges Mr. Hill and his attorney have sent both Mr. Hershberger and Ms. Hawk-Sawyer administrative grievances and letters warning of the potential detrimental effects of ADX placement.  This alleged conduct falls far short of the purposeful availment necessary to establish jurisdiction over defendants Hershberger and Hawk-Sawyer.  It is not reasonable to suggest that federal prison officials

36

may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state. The district court properly dismissed without prejudice all claims against these two defendants. [FN4]

> FN4. The district court's personal jurisdiction ruling relieved Ms. Hawk-Sawyer and Mr. Hershberger from potential liability to Mr. Hill in a Colorado forum. The discussion of Mr. Hill's claims in the following text, therefore, is primarily addressed to the sufficiency of the case against remaining defendant Mr. Pugh. However, the analysis is equally applicable to the other two defendants.

[3] Next, the district court analyzed its subject matter jurisdiction and determined that Mr. Hill's claims for money damages against defendants in their official capacities were barred by the doctrine of sovereign immunity. As the court recognized, it is well established that federal employees sued in their official capacities are immune from a *Bivens* suit. *See, e.g., Hatten v. White,* 275 F.3d 1208, 1210 (10th Cir.2002). Therefore, these claims were properly dismissed for lack of subject matter jurisdiction.

**\*\*4** Mr. Hill also sought to evade the sovereign immunity bar by means of a claim under the APA, which generally waives sovereign immunity in agency review actions seeking equitable relief. *See United Tribe of Shawnee Indians v. United States,* 253 F.3d 543, 550 (10th Cir.2001). His amended complaint alleges that, by originally assigning him to ADX and subsequently failing to change his assignment, defendants violated bureau of prisons' policy. Specifically, he charges that defendants ignored a program statement providing that ADX should be reserved for inmates who pose a serious threat to others and who are not currently diagnosed as suffering from serious psychiatric illnesses.

**\*720** Bureau of Prisons' program statements, however, are "internal agency guidelines" that are not "subject to the rigors of the [APA], including public notice and comment." *Jacks v. Crabtree,* 114 F.3d 983, 985 n. 1 (9th Cir.1997) (quotation omitted); *see Reno v. Koray,* 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (describing a bureau of prisons program

statement as an "internal agency guideline ... akin to an 'interpretive rule' that 'do[es] not require notice and comment' ") (quoting *Shalala v. Guernsey Mem'l Hosp.,* 514 U.S. 87, 99, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995)). "Whether or not" the Bureau of Prisons makes its program statements known, they "create entitlements (meaning something that may be enforced to prevent substantive transgressions) only if adopted in one of the ways the APA prescribes...." *Miller v. Henman,* 804 F.2d 421, 426 (7th Cir.1986). Because Mr. Hill does not allege that the program statement at issue was adopted under APA procedures, the district court properly dismissed the APA claim.

[4] After resolving the above issues relating to jurisdiction and sovereign immunity, the district court turned to the question of whether the amended complaint stated a claim upon which relief can be granted. *See* Rule 12(b)(6). Mr. Hill's first substantive contention is that his placement and retention in ADX violate his due process rights.

We are unable to discern a possible due process violation arising from Mr. Hill's classification. Prisoners are not entitled to any "particular degree of liberty." *Templeman v. Gunter,* 16 F.3d 367, 369 (10th Cir.1994). Further, a review of the facts alleged in the complaint shows that, notwithstanding Mr. Hill's rhetoric, his placement does not impose an "atypical, significant" hardship upon him in relation to the ordinary incidents of prison life. *Sandin v. Conner,* 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Additionally, this situation does not give rise to an equal-protection violation. Mr. Hill alleges that, as an inmate in the ADX general population, he is similarly situated to inmates placed in the ADX control unit for disciplinary reasons, but that he is not allowed a hearing comparable to the one afforded inmates in the control unit. *See* 28 C.F.R. § 541.43 (setting out hearing procedure for inmates recommended for placement in a control unit). Because the classification of prisoners based upon their situs of incarceration does not employ a suspect class or burden a fundamental right, it "is accorded a strong presumption of validity." *Heller v. Doe ex rel. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). The only proper judicial inquiry is whether the challenged classification bears a rational

relationship to a legitimate penological concern. *See Shifrin v. Fields,* 39 F.3d 1112, 1114 (10th Cir.1994).

**\*\*5** [5] As Mr. Hill has acknowledged, he was placed in ADX for his commission of bank fraud, wire fraud, and money laundering offenses while imprisoned in another facility on earlier charges. The amended complaint states that, in sentencing Mr. Hill, the trial court recommended to the Bureau of Prisons that "the defendant be ... held under the most restrictive environment possible, with limited access to visitors, telephones and other inmates." R., Vol. 1, Doc. 22 at ¶ 36. The trial court's statement provides a rational basis for the difference in hearing opportunities between Mr. Hill's prison classification and another inmate's disciplinary assignment to the ADX control unit.

Finally, we measure Mr. Hill's cruel and unusual punishment allegations against prison officials' Eighth Amendment duty to maintain "humane conditions of confinement," including "adequate food, clothing, **\*721** shelter, and medical care." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A plaintiff claiming a violation of the Eighth Amendment must satisfy both an objective test (whether the conditions can be considered cruel and unusual) and a subjective test (whether the defendants acted with a culpable state of mind). *Wilson v. Seiter,* 501 U.S. 294, 298, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

The objective component of the Eighth Amendment test requires allegations that an inmate was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). "To the extent that [an inmate's] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* "Mere 'inactivity, lack of companionship and a low level of intellectual stimulation do not constitute cruel and unusual punishment.' " *Caldwell v. Miller,* 790 F.2d 589, 600-01 n. 16 (7th Cir.1986) (quoting *Bono v. Saxbe,* 620 F.2d 609, 614 (7th Cir.1980)).

[6] We cannot conclude that Mr. Hill's Eighth Amendment allegations state a claim upon which relief may be granted. He contends that ADX conditions are cruel and unusual in that he is isolated in his cell twenty-three hours a day for five days a week and

twenty-four hours the remaining two days. He asserts that the resulting sensory deprivation amounts to cruel and unusual punishment. He admits, however, that "his minimal physical requirements-food, shelter, clothing and warmth" have been met. R., Vol. 1, Doc. 22, at ¶ 17. The situation described in the amended complaint shows neither an "unquestioned and serious deprivation of basic human needs," *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392, nor intolerable or shocking conditions, *id.* at 348, 101 S.Ct. 2392.

The judgment of the district court is AFFIRMED. The mandate shall issue forthwith.

C.A.10 (Colo.),2003.
Hill v. Pugh
75 Fed.Appx. 715, 2003 WL 22100960 (C.A.10 (Colo.))

END OF DOCUMENT