IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 05-cv-01282-MSK-KLM

JEFFREY SCOTT DURHAM,

      Plaintiff,

v.

ROBERT A. HOOD,
T. G. WERLICH, and
RANDY MADISON,

      Defendants.

_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion for

Summary Judgment **(# 287)**, Mr. Durham's response **(# 295)**, and the Defendants' response

**(#297)**; and Mr. Durham's Fed. R. Civ. P. 72(a) Objection **(# 296)** to the June 16, 2009 Minute

Order **(# 294)** of the Magistrate Judge, denying Mr. Durham's Motion for Judicial Notice **(#291)**,

and the Defendants' response **(# 298)**.

## FACTS

At all times relevant, Mr. Durham was an inmate of the Federal Bureau of Prisons

("BOP"), housed at the Administrative Maximum ("ADX") facility in Florence, Colorado. He

contends that from October 2003 until September 29, 2004, inmates were allowed to smoke

tobacco products in their cells. He contends that, as a result of inadequate ventilation, he was

exposed to hazardous levels of environmental tobacco smoke ("ETS" or "secondhand smoke")

1

during this period. He asserts a single *Bivens* claim against each Defendant, sounding in a violation of the 8th Amendment to the United States Constitution. In short, he alleges that each Defendant ignored federal regulation, BOP policies, and Mr. Durham's grievances concerning ETS, thereby condoning his exposure to it.

The Defendants move **(# 297)** for summary judgment on the Plaintiff's claim arguing: (i) he cannot establish that he was actually exposed to a risk of serious damage to his future health; (ii) he cannot establish that any Defendant knew of and disregarded an excessive risk to his health and safety; (iii) he cannot show that the contours of the 8th Amendment were "clearly established" in the circumstances presented herein; and (iv) to the extent the Court permits the claims to proceed, the statute of limitations prevents Mr. Durham from recovering for events preceding July 13, 2005.

The Defendants' motion follows a ruling by the Court regarding the admissibility of testimony by James Repace, an expert proffered by the Plaintiff. Pursuant to Fed. R. Evid. 702, the Defendants challenged the admissibility of Mr. Repace's opinions on various grounds **(# 239)**.[1] The Court conducted several days of hearings **(# 265, 277, 279)** on the request. On March 13, 2009, the Court ruled, **(# 280)** finding that Mr. Repace could opine that: (i) secondhand smoke is well-known to cause morbidity and mortality from lung cancer and heart disease and to increase the risk of chronic lung disease; (ii) that secondhand smoke causes irritation of the eyes, nose, and throat and can cause migraine headaches; and (iii) that secondhand smoke contains numerous toxic chemicals in both the gas and particulate phase.

---

[1]The motion also addressed opinions by two experts proffered by the Defendants, but it is not necessary to address those opinions herein.

However, the Court found that Mr. Repace could not express several different opinions regarding the specific exposure levels experienced by Mr. Durham and the risks resulting therefrom because he did not reliably apply his methodology to derive the opinions.[2]

Following that ruling, Mr. Durham moved **(# 291)** that, pursuant to Fed. R. Evid. 201, the Court take judicial notice of four documents: a 1986 Report of the Surgeon General entitled "The Health Consequences of Involuntary Smoking," a 2006 Report of the Surgeon General entitled "The Health Consequences of Involuntary Exposure to Tobacco Smoke," a 1992 report of the Environmental Protection Agency entitled "Respiratory Health Effects of Passive Smoking: Lung Cancer and Other Disorders," and certain portions of BOP regulations found in various portions of Title 28 of the Code of Federal Regulations, as well as policy statements published by the BOP.

The Court referred this motion to the Magistrate Judge pursuant to Fed. R. Civ. P. 72(a). On June 16, 2009, the Magistrate Judge entered a Minute Order **(# 294)** denying Mr. Durham's motion, stating that "the Court is aware of its authority to take judicial notice of adjudicative facts under Fed. R. Evid. 201 and will consider all relevant law and facts in resolving the merits of the case." Although this Order nominally denied the motion, it clearly stated that the Court would properly take judicial notice of any facts properly subject to notice. Mr. Durham filed a

---

[2]Among other things, the Court found that Mr. Repace did not reasonably justify his assumption that every smoking inmate at ADX was a habitual smoker and that such inmates had access to an unlimited supply of cigarettes. In actuality, cigarettes may be obtained by ADX inmates only through the commissary, and commissary records show that inmates purchased 533,000 cigarettes during the relevant time period, not the 3.1 million cigarettes that Mr. Repace assumed were smoked.

Rule 72(a) Objection[3] **(# 296)**, contending that the Magistrate Judge "failed to consider the

applicable legal standard as developed in the Tenth Circuit," and repeated, essentially verbatim,

the arguments he previously raised in the motion.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if

no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Summary adjudication is authorized when there is no genuine dispute as to any material fact and

a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs

what facts are material and what issues must be determined. It also specifies the elements that

must be proved for a given claim or defense, sets the standard of proof and identifies the party

with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment

motion, a court views all evidence in the light most favorable to the non-moving party, thereby

favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

Where, as here, the moving party does not have the burden of proof at trial, it must point

---

[3]Without making specific findings as to the issue, the Court assumes that Mr. Durham's
Objection was timely, given the operation of the prison mailbox rule.

to facts showing the non-movant's inability to produce sufficient evidence to establish one or more elements of the claim or defense that the non-movant is obligated to prove. The non-movant is then required to come forward with sufficient competent evidence to establish a genuine dispute of fact as to the existence of the challenged element(s). If the non-movant does so, a trial is required. If the non-movant fails to produce sufficient competent evidence that, taken in the light most favorable to him, would establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

As always, the Court construes Mr. Durham's *pro se* pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in Mr. Durham's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Mr. Durham of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat Mr. Durham according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

**B. Defendants' Motion**

To establish a violation of the Eighth Amendment in these circumstances, Mr. Durham must establish two basic elements: (i) he was exposed to a serious risk of harm; and (ii) the Defendants were deliberately indifferent to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In the context of an Eighth Amendment claim arising from exposure to ETS, Mr.

Durham must prove these two elements by showing: (i) he was exposed to unreasonably high levels of ETS constituting a present or future hazard to his health; (ii) the magnitude of the risk to his health was such that it violated contemporary standards of decency to expose anyone to such a risk; (iii) that the Defendants were objectively aware of the facts demonstrating the risk of serious harm to his health; and (iv) that they subjectively recognized the risk and chose not to remedy it. *Id.* at 828; *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993).

Turning first to the question of exposure, Mr. Durham must come forward with evidence that "he himself is being exposed to unreasonably high levels of ETS." *Helling,* 509 U.S. at 35. It is not sufficient for the inmate to show "sporadic" or "fleeting" exposure to ETS, nor is it sufficient for the inmate to show that the exposure level was simply "unwelcome and unpleasant" and that it caused nausea and coughing. *Adams v. Banks*, 663 F.Supp.2d 485, 497 (S.D. Miss. 2009), *citing Richardson v. Spurlock,* 260 F.3d 495, 498 (5th Cir. 2001). Moreover, anecdotal accounts of the amount of smoke in the jail is usually insufficient, as *Helling* calls for "objective" evidence of exposure. *Scott v. District of Columbia*, 139 F.3d 940, 942 (D.C. Cir. 1998); *Larson v. Kempker*, 414 F.3d 936, 940 (8th Cir. 2005) (affirming summary judgment to defendants where inmate's proffered expert "performed no scientific tests to establish levels of ETS in Larson's cell" and inmate offered "no reliable basis to estimate the levels of ETS to which he is exposed or specific evidence concerning how those levels of ETS would affect his future health").

With Mr. Repace's opinions on this issue found inadmissible, Mr. Durham relies primarily on only his own anecdotal evidence of his exposure level. Indeed, Mr. Durham attempts to establish an unreasonable level of exposure almost entirely by reference to the

symptoms he experienced. For example, he contends that the smoke entering his cell caused him headaches, watery and itchy eyes, difficulty breathing, migraine headaches, coughing, and so on. But symptoms, alone, do not establish an exposure level; an inmate who is unusually sensitive to secondhand smoke might exhibit severe symptoms at low exposure levels, or a particularly hardy inmate might tolerate a very high exposure level without demonstrating any symptoms. Thus, evidence that an inmate experienced adverse symptoms from exposure to secondhand smoke is not sufficient to establish that his exposure level was unreasonable.

Mr. Durham's anecdotal evidence of exposure level is further weakened by the fact that he occupied a single cell throughout the time period at issue, and was exposed to ETS only through what he contends was inadequate ventilation, with ETS circulating into his cell air from cells where other inmates smoked unknown amounts of cigarettes. Mr. Durham's situation differs from those in which courts have found purely anecdotal evidence of exposure to be sufficient where such anecdotal evidence demonstrated quantitatively ascertainable amounts of smoke being generated directly by inmates within the plaintiff inmate's cell. *See e.g. Adams v. Banks*, 663 F.Supp.2d 485, 498 (S.D. Miss. 2009) (inmate produced affidavits from present and former cellmates that they smoked two to five packs of cigarettes per day in the same cell as plaintiff inmate) *and cases cited therein*. Thus, the Court finds that Mr. Durham's limited anecdotal evidence of his exposure level is insufficient to establish the "objective" level of exposure required by *Helling*.

Moreover, it is not sufficient for an inmate simply to show that he was exposed to a certain level of ETS. Under *Helling*, he must also show that that exposure level was such that it posed a present or future health risk. In this regard, Mr. Durham's evidence is also insufficient.

7

He relies on his testimony of symptoms described above that occurred when he was exposed to ETS, and generally points to reports and other documents for the proposition that there is no safe level of exposure to secondhand smoke. Both arguments miss the mark.

*Helling* requires that the exposure must result in the kind of risk to health that "violates contemporary standards of decency to expose <u>anyone</u> unwillingly to such a risk." 509 U.S. at 36 (emphasis in original). The fact that Mr. Durham suffered adverse symptoms when exposed to secondhand smoke does not, of itself, demonstrate that his exposure level was such that it presented a serious risk of harm to his health, much less to anyone else. In addition, his symptoms, bothersome as they were to him, are not sufficient to demonstrate that the smoke to which he was exposed created a health risk that violated "contemporary standards of decency".[4] *See e.g. Abdullah v. Washington*, 530 F.Supp.2d 112, 117-18 (D.D.C. 2008) (inmate failed to come forward with sufficient evidence of risk of harm caused by exposure where, as here, court struck testimony by Mr. Repace on the subject, leaving only the inmate's insufficient anecdotal testimony on the objective element).

Consideration of the various reports concerning secondhand smoke that are proffered by Mr. Durham does not change this result. These reports iterate the facts underlying the admissible opinions of Mr. Repace: *e.g.* that exposure to secondhand smoke increases the risk of various illnesses. The statements in these reports that ETS exposure results in greater observed health

---

[4]The Court observes that, in Colorado, legislation to prohibit smoking in restaurants and bars did not take effect until January 2006, well after the events at issue in this case. To the extent one attempts to judge "contemporary standards of decency" during the period at issue here, it is evident that society readily contemplated the possibility that non-smokers would be exposed to ETS in bars and restaurants, possibly suffering temporary symptoms like Mr. Durham's as a result.

maladies in a population – which arguably leads to a conclusion that a certain level of exposure to ETS results in a specific increase in health risks - does not address either what Mr. Durham experienced or what he must prove.

Mr. Durham must prove that he has suffered an increased risk of health problems. *See Williams v. District of Columbia*, 530 F.Supp.2d 119, 127 (D.D.C. 2008). The inquiry here is not whether ETS is generally harmful, or whether it has been shown to cause increased risks in populations exposed to it; the inquiry here is whether Mr. Durham's particular exposure to ETS caused Mr. Durham to suffer a greater risk of harm. *Id.* General studies, medical journals, and statistics are not sufficient to make the individualized showing of risk that is required, and without such an individualized showing, Mr. Durham's claim fails. To conclude otherwise would be to render ETS cases strict liability; once an inmate showed that he was exposed to secondhand smoke, his burden of proof is satisfied because exposure generally means increased health risks. Mr. Durham's failure to demonstrate that he himself has suffered an increased risk of prevents him from proving his claim.

Accordingly, because Mr. Durham cannot establish the objective element of *Helling* – that he was exposed to an unreasonable level of ETS, resulting in increased risk to his health, the Defendants are entitled to summary judgment.[5] Because the Court's conclusion is the same

---

[5]Although the Court need not reach the issue, it would also find that Mr. Durham has failed to come forward with evidence sufficient to show that the Defendants were subjectively aware of Mr. Durham's exposure level and the risks to his health. Indeed, the Defendants testified that they did not witness frequent smoking among inmates in Mr. Durham's vicinity, and Mr. Durham does not directly refute that testimony. The fact that the Defendants may have witnessed Mr. Durham with watery eyes, a cough, or headache does not establish that these witnesses suspected that Mr. Durham's condition was a result of ETS, much less that they subjectively believed that such exposure presented a significant risk to his general health.

regardless of whether the Court takes judicial notice of the documents cited by Mr. Durham, his

Rule 72(a) Objection to the Magistrate Judge's ruling is overruled, as moot.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment **(# 287)** is

**GRANTED**.  Judgment in favor of the Defendants shall enter contemporaneously with this

Order.  Mr. Durham's Rule 72(a) Objection **(# 296)** is **OVERRULED** as moot, and the Court

**AFFIRMS** the Magistrate Judge's ruling **(# 294)** denying his Motion for Judicial Notice **(# 291)**.

Dated this 11th day of March, 2010

**BY THE COURT:**

Marcia S. Krieger
United States District Judge